**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LONG GROVE INVESTMENTS, LLC, | |
| Plaintiffs, | |
| v. | Case No. 18-cv-5237 |
| BALDI CANDY CO. d/b/a LONG GROVE CONFECTIONERY CO., | The Honorable John Robert Blakey |
| Defendant. | |

**LGI'S RESPONSE TO DEFENDANT BALDI CANDY CO.'S RULE 56.1 STATEMENT
OF MATERIAL FACTS AND LGI'S STATEMENT OF ADDITIONAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(b)(3), Plaintiff

hereby submits its response to Defendant's Statement of Undisputed Material Facts and a

statement of additional facts that require the denial of summary judgment.

**I.      RESPONSE TO BALDI'S STATEMENT OF FACTS[1]**

1.      From 1971 until June 2013 (the "LGC Period"), Long Grove Confectionery Co.
("LGC") was an Illinois corporation engaged in the business of manufacturing, distributing, and
selling confectionery products and baked goods. **Exhibit A**, Affidavit of Dwayne Hallan
Affidavit, ¶5; **Exhibit B**, Affidavit of Benjamin Haskin, counsel for Baldi, ¶7; **Exhibit HH**,
Illinois Secretary of State Corporation File Detail.

**RESPONSE**

Admitted that LGC was an Illinois corporation, which was incorporated in April 1971

and dissolved in June 2013. Admitted that from approximately 1993 until June 2013 LGC was

engaged in the business of manufacturing, distributing, and selling undefined confectionery

products and backed goods. LGI disputes any assertion regarding the business operations of LGC

from 1971 until approximately 1993 as not supported by the cited evidence. Mr. Hallan's

declaration specifically limits his statement regarding the business operations of LGC to the

---

[1] Baldi's statement of facts include a number of headers which are argumentative and/or assume facts
which are disputed. LGI has deleted these section headers, to which no response is required.

period in which Mr. Hallan was Director of Operations of LGC (approximately 1993) through Baldi's acquisition of LGC in 2013. (Ex. A, ¶¶ 3,5.)[2]

2.       During its operation, LGC had a wholesale division and a retail division. The retail division consisted of several retail stores that sold LGC goods and products. **Exhibit C**, Dwayne Hallan Deposition Transcript, 14:11-15:21.

**RESPONSE**

Admitted that, at least at some point during its operation, LGC had wholesale operations and retail operations, the latter of which included more than one retail store as of 2010. LGI disputes that any suggestion as to the business operations of LGC existing throughout the entirety of its operation as this is not supported by the cited evidence. Mr. Hallan testified that he would "characterize" the LGC operation as having retail and wholesale divisions, not that they were official divisions of LGC. (Ex. C, Hallen Dep. at 14:11-18.) Mr. Hallan testified that LGC had two retail locations as of 2010. *Id.* 15:3-12. The number and location of LGC retail locations changed over time and Mr. Hallan hedged in his testimony regarding the precise timeline. *Id.* 15:13-16:1. Mr. Hallan did not testify that both wholesale and retail operations existed throughout the entirety of LGC's existence.

3.       One of LGC's retail locations was a store located at 230 Robert Parker Coffin Road, Long Grove, Illinois 60047, that was called and known as the Long Grove Apple Haus (the "Apple Haus Store"). Ex. A, ¶6; Ex. C, 14:15–15:21.

**RESPONSE**

Admitted that the building located at 230 Robert Parker Coffin Road, Long Grove, Illinois, 60047 was called and known (and is called and known) as the Long Grove Apple Haus. LGI admits that, at some point in time within the "LGC Period," as defined by Baldi, LGC operated a retail store in the Long Grove Apple Haus building but disputes the assertion or

---

[2] As used in LGI's responses and its statement of additional facts, lettered exhibits (e.g., "Ex. A") refer to the exhibits to Baldi's Rule 56.1 statement. (Dkt. 33.) Numbered exhibits (e.g., Ex. 1) refer to the exhibits attached to LGI's response.

implication that LGC operated the retail store through the entirety of the LGC period. The retail

location at the Long Grove Apple Haus Building closed in December 2011. (*See* Dkt. 33, Ex. A,

¶13.)

4.      LGC owned and operated the Apple Haus Store, which opened in approximately
1977. Ex. A, ¶¶6-13; Ex. C, 20:10-20:13.

**RESPONSE**

Admitted that LGC owned and operated the retail store in the Long Grove Apple Haus

building and that the store opened in approximately 1977.

5.      LGC sold a variety of baked goods at the Apple Haus Store during the LGC
Period, including but not limited to: apple pies, apple cider donuts, apple cider, strudel,
turnovers, fritters, breads, cookies, jams, jellies, and apple butter, with the Long Grove Apple
Haus name and brand (the "Apple Haus Mark") on their label, packaging or container. Ex. A, ¶¶
7-8; Ex. C, 21:4-22:23.

**RESPONSE**

Admitted that LGC sold a variety of baked goods in the retail store located in the Long

Grove Apple Haus building between 1977 and 2011 and that, at certain points during that time

period, one or more of apple pies, apple cider donuts, apple cider, strudel, turnovers, fritters,

breads, cookies, jams, jellies, and apple butter were sold. LGI admits that at least some of these

products at some of the time included the term APPLE HAUS on the label, packaging or

container. LGI disputes that baked goods were sold at the retail shop at the Long Grove Apple

Haus building during the entirety of the LGC Period, given that the retail shop did not exist

during the entire period. LGI disputes the assertion that all identified products were sold during

the entire period the retail shop is open or that all products always included the APPLE HAUS

mark on their label, packaging, or container. This assertion is imprecise and conclusory.

6.      During the LGC Period, LGC apple pies were sold in a box (the "Apple Haus Pie
Box") that included the Apple Haus Mark and a design of a red apple with a stem and two leaves
(the "Red Apple"). LGC apple cider ("Apple Haus Cider") was sold with a label with the Apple

Haus Mark and the Red Apple. A picture of the Apple Haus Pie Box and Apple Haus Cider are attached as **Exhibits U and GG**. Ex. A, ¶¶9-10; Ex. C, 69:23-70:6.

**RESPONSE**

Admitted that apple pies were sold in the box depicted at Exhibit U for at least a subset of the LGC period. Admitted that apple cider was sold with the labels depicted at Exhibit GG during at least a subset of the LGC period. LGI disputes the assertion that the name APPLE HAUS or the specific packaging identified in Exhibit U and GG were utilized during the entire "LGC Period." This assertion is not supported by the cited evidence, in which Mr. Hallan limits his declared testimony to the "LGC Operations Period," which is defined as from 1993 until 2011. (*See* Ex. A, ¶¶ 3, 5, 9-10.)

7.     LGC affixed a wooden sign on the outside of the Apple Haus Store (the "Apple Haus Store Sign"). A picture of the Apple Haus Store Sign is attached as **Exhibit Y**. **Exhibit D**, Affidavit of Craig Leva, ¶11; Ex. C, 51:24-52:14.

**RESPONSE**

Admitted that the sign depicted in Exhibit Y was affixed outside the retail store located in the Long Grove Apple Haus building for a period of time and that the sign is wooden.

8.     LGC also owned and operated a retail store called the Long Grove Confectionery (the "LGC Store") that was located at 220 Robert Parker Coffin Road, Long Grove, Illinois 60047. The LGC Store sold confectionery candy products as well as frozen apple pies in the Apple Haus Pie Box. Ex. A, ¶¶14-15; Ex. C, 24:11-25:1, 54:8-54:16.

**RESPONSE**

Admitted that LGC owned and operated a retail store called the Long Grove Confectionery that was located at 220 Robert Parker Coffin Road, Long Grove, Illinois, 60047 and that the store sold confectionery candy products and, for a certain period, sold frozen apple pies in the box depicted at Exhibit U. LGI disputes the assertion or implication that frozen pies were sold at the Long Grove Confectionery store throughout the entire LGC period and/or that

said pies were sold in the box depicted at Exhibit U during the entirety of the period. These assertions or implications are not supported by the cited evidence.

9.    LGC also owned and operated a retail outlet store in Buffalo Grove, Illinois (the "LGC Outlet"), that was attached to its manufacturing plant in Buffalo Grove, Illinois. The LGC Outlet also sold frozen apple pies the Apple Haus Pie Box. Ex. A, ¶¶16-17; Ex. C, 15:10-16:24, 58:6-59:4.

**RESPONSE**

Admitted that, at some point in the LGC Period, LGC owned and operated a retail outlet store in Buffalo Grove, Illinois that was attached to its manufacturing plant and that, at some period of time, the outlet store sold frozen pies and that, at a certain period of time, theses pies were sold in boxes as depicted in Exhibit U. LGI disputes the assertion or implication that the outlet store operated during the entire LGC Period, that frozen pies were sold at the outlet during the entire LGC Period, and that all the pies sold at the outlet store throughout the LGC Period were sold in the boxes depicted at Exhibit U. These contentions or implications are not supported by the cited evidence and/or are vague and imprecise.

10.    During the LGC Period, LGC's wholesale operations included the sale of apple pies in the Apple Haus Pie Box and Apple Haus Cider to wholesale customers, including: Lou Malnati's, Sunset Foods Grocery Store, and Oberweis Diary (the "Wholesale Customers"). **Exhibit E**, Craig Leva Deposition Transcript, 120:1-120:4; Ex. A, ¶19.

**RESPONSE**

Admitted that, at some point during the LGC Period, LGC sold apple pies to wholesale customers, including at various points in time, the following customers: Lou Malnati's (for catalog purchases and not in restaurants), Sunset Foods Grocery Store, and Oberweis Dairy. LGI admits for the purposes of summary judgment only that LGC, at some point during the LGC Period, sold apple cider to wholesale customers, including at various points in time, the following customers: Lou Malnati's (for catalog purchases and not in restaurants), Sunset Foods

Grocery Store, and Oberweis Dairy.[3] LGI disputes the assertion or implication that sale of pies and cider to wholesale customers occurred throughout the entirety of the LGC Period.

11.     Each year during the LGC Period, LGC participated in three major outdoor festivals in Long Grove, Illinois: (a) Long Grove Chocolate Fest that takes place over a weekend in May ("Chocolate Fest"); (b) Long Grove Strawberry Fest that takes place over a weekend in June ("Strawberry Fest"); and (c) Long Grove Apple Fest that takes place over a weekend in September ("Apple Fest," and collectively with the Chocolate Fest and Strawberry Fest the "Long Grove Festivals"). Ex. A, ¶21; Ex. C, 30:4-30:24.

**RESPONSE**

Admitted that LGC participated in the three Long Grove Festivals in Long Grove, Illinois (and that the names and general dates of these festivals are correct). LGI disputes the assertion that LGC participated in these festivals "each year during the LGC Period," which is not supported by the cited evidence.

12.     LGC made use of the Apple Haus Mark at the Long Grove Festivals by selling baked goods including, but not limited to, pies and donuts, with packaging and labels bearing the Apple Haus Mark and by using the Apple Haus Mark to advertise on signage, banners, bags, and labels. Ex. A, ¶22; Ex. C, 30:4-30:24.

**RESPONSE**

Admitted that LGC sold certain baked goods at the Long Grove Festivals at Long Grove Festivals, including pies and donuts, which at various times included the APPLE HAUS name but LGI disputes that all pies, donuts, and baked goods sold at Long Grove Festivals during the Long Grove Period bore the name APPLE HAUS on packaging and labels. LGI admits that the APPLE HAUS mark was used on some signage, banners, bags, and labels but disputes that the APPLE HAUS mark was used on all signage, banners, bags, and labels or that the use on each of

---

[3] The cited declaration and deposition testimony lumps pies and cider together but, based on the evidence seen in discovery, purchases of pies and cider were separate and that not all customers purchased Cider. During the period for which evidence was received, cider sales were minimal and isolated to a single customer. However, LGI does not believe the dispute over this issue is material to the motion for summary judgment and, as such, does not dispute it in connection with this motion.

these constitute or was made for the purpose of advertisement. (Ex. M, Forsythe Dep. at 187:4-188:2.)

13.     LGC closed the Apple Haus Store in December, 2011 and the Apple Haus Store Sign was taken down at that time. Ex. A, ¶13; Ex. C, 20:10-20:23, 51:24-51:14.

**RESPONSE**

Admitted that the retail store operated in the Long Grove Apple Haus was closed in December 2011. LGI disputes that the sign depicted at Exhibit Y was taken down in December 2011. Marsha Forsythe testified that her belief, based on her personal recollection and the fact that photographs associated with the auction included the sign on the building, is that the Apple Haus Store sign was on the outside of the Long Grove Apple Haus at the time of the 2014 auction. (Ex. M, Forsythe Dep. at 100:16-102:4, 111:21-114:18.)

14.     LGC continued using the Apple Haus Mark after closing the Apple Haus Store by selling apple pies in the Apple Haus Pie Box and Apple Haus Cider at the LGC Store, LGC Outlet and to the Wholesale Customers, as well as through its continued participation at the Long Grove Festivals. Ex. A, ¶¶13-17, 19, 21-23; Ex. C, 25:18-22; 27:14-30:1.

**RESPONSE**

LGI admits that the pies sold by LGC between December 2011 and June 2013 at the LGC Store, Outlet and to Wholesale Customers used the box depicted in Exhibit Y and that LGC continued to participate at Long Grove Festivals during that time. LGI admits that, between December 2011 and June 2013, LGC sold at least some cider to at least one wholesale customer. LGI disputes the assertion that cider was sold to retail customers, whether at the LGC Store or LGC Outlet, during this period. This contention is not supported by the cited evidence.

15.     LGC's use of the Apple Haus Mark and sale of Apple Haus products continued through June, 2013. Ex. A, ¶23; Ex. C, 27:14-30:24.

**RESPONSE**

LGI admits that the pies sold by LGC between December 2011 and June 2013 at the LGC Store, Outlet and to Wholesale Customers used the box depicted in Exhibit Y and that LGC continued to participate at Long Grove Festivals during that time. LGI admits that, between December 2011 and June 2013, LGC sold at least some cider to at least one wholesale customer.

LGI disputes the assertion that cider was sold to retail customers, whether at the LGC Store or LGC Outlet, during this period. This contention is not supported by the cited evidence. LGI disputes that the "sale of Apple Haus products," other than frozen pies small quantities of cider, and donuts continued between December 2011 and June 2013, and the donuts were only sold at Long Grove Festivals. The term "Apple Haus Products" is defined broadly and the cited evidence confirms that sales of baked goods (including donuts) were discontinued in retail stores during this time period. (*See* Ex. C, Hallen Dep at 28:21-29:20.)

16. Baldi is an Illinois corporation that is engaged in the confectionery business. At all relevant times, Baldi had a factory with an attached outlet store called "Chicago Candy and Nut" located at 3425/3704 North Kimball, Chicago, Illinois. Ex. D, ¶5.

**RESPONSE**

Admitted.

17. Leva is the President of Baldi. Ex. D, ¶2.

**RESPONSE**

Admitted.

18. On or about June 13, 2013, Baldi purchased the assets of LGC pursuant to an Asset Purchase Agreement (the "Asset Agreement") executed by and between Baldi, LGC, and John Mangel. Ex. D, ¶6, **Exhibit S**, Asset Agreement.

**RESPONSE**

Admitted that, on or around June 13, 2013, Baldi purchased certain assets of LGC pursuant to the Asset Purchase Agreement. LGI disputes the assertion or implication that all

assets of LGC were purchased. The Asset Agreement speaks for itself as to what was or was not purchased.

19.     Pursuant to the terms of the Asset Agreement, Baldi purchased substantially all of LGC's assets, properties, and rights related to LGC's business. Ex. D, Ex. S, p. 1.

**RESPONSE**

Admitted that, under the Asset Agreement, Baldi purchased certain assets, properties and rights related to LGC's business. LGI disputes the assertion that Baldi purchased "substantially all" of LGC's assets, properties and rights under the agreement, which speaks for itself.

20.     The assets purchased by Baldi pursuant to the Asset Agreement included, among other listed items, all of LGC's inventory, packaging, supplies, finished goods, and raw materials; the right to utilize LGC's corporate name and/or trademarks; LGC's intellectual property, catalogs, promotional materials, customer lists, vendor lists, price lists, drawings, processes, trade secrets, recipes, web addresses and sites; and all goodwill associated with LGC. Ex. D, Ex. S, pp. 1-2, ¶1.2.

**RESPONSE**

Admitted that ¶ 1.2 of the Asset Agreement identifies as "Purchased Assets," all of LGC's inventory, packaging, supplies, finished goods, and raw materials; the right to utilize LGC's corporate name and/or *tradenames* (i.e., not trademarks); certain Intellectual Property as defined in ¶ 4.6 of the Asset Agreement (and not all of LGC's intellectual property), catalogs, promotional materials, customer lists, vendor lists, price lists, drawings, processes, trade secrets, web addresses and sites; and all good will associated with LGC. LGI disputes the assertion that the Asset Agreement includes recipes, which are not mentioned in the agreement.

LGI disputes that Baldi purchased any trademarks other than identified in Schedule 4.6 of the Asset Agreement and specifically disputes any assertion that Baldi purchased the trademark APPLE HAUS or LONG GROVE APPLE HAUS pursuant to the Asset Purchase Agreement or otherwise. (*See* Ex. S at Schedule 4.6 (not including APPLE HAUS or LONG GROVE APPLE HAUS); *see also id.* at ¶ 4 (Schedule 4.6 contains a *complete* and correct list and summary

description of all intellectual property…); Ex. 2, Baldi's Resp. to Request to Admit, ¶ 8; Ex. E,

Leva Dep. at 31:15-33:2 (testifying that Baldi was informed by LGC prior to finalizing the Asset

Agreement that "Apple Haus is not included in the sale" and admitting that Baldi did not believe

the trademark "LONG GROVE APPLE HAUS" was included in the transaction); *id*. at 213:15-

18 (In 2014, "I didn't own the [Apple Haus] trademark"); *id.* at 37:16-38:17 (Leva agreeing that

Section 4.6 is a complete list of trademarks conveyed in the transaction).)

21.     Contemporaneously with the execution of the Asset Agreement, Baldi and LGC executed an Intellectual Property Assignment (the "IP Assignment") in which LGC assigned, transferred, and conveyed to Baldi all of its right, title and interest to all of its intellectual property, including all patents, copyrights, tradenames, registered trademarks and all other trademarks, service marks, logos, brands, trade dress, websites, and domain names. Ex. D, ¶7, **Exhibit T**, IP Assignment.

**RESPONSE**

Admitted that the IP Assignment was contemporaneously executed with the Asset

Agreement and that LGC assigned the right, title and interest of certain intellectual property to

Baldi in this agreement. LGI disputes that "all" intellectual property was transferred. The IP

Agreement was co-extensive in scope to the Asset Agreement and excludes the intellectual

property not conveyed through the Asset Agreement. (*See* Ex.T at 1 ("pursuant to that certain

asset purchase agreement dated June 10, 2013…") Ex. E, Leva Dep. at 40:2-20; 42:10-13;

213:15-18 (In 2014, "I didn't own the [Apple Haus] trademark.").)

22.     The packaging and supplies acquired by Baldi as part of the Asset Agreement included the following items with the Apple Haus Mark that were stored in LGC's warehouse in Buffalo Grove:

  a.  2,543 Apple Haus Pie Boxes;

  b.  67,500 white shopping bags that included the Apple Haus Mark (the "Apple Haus Bag"). A picture of an Apple Haus Bag is attached to Leva's Affidavit as Exhibit 4.

  c.  Thousands of white labels and stickers bearing the Apple Haus Mark with a picture of the Red Apple (the "Apple Haus Label"). A picture of the Apple Haus Label is attached to Leva's Affidavit as Exhibit 5.

Ex. D, ¶9; Ex. C, 36:12-46:1.

**RESPONSE**

Admitted that Baldi received certain packing and supplies as part of the Asset Agreement, including boxes with the design in Exhibit U, certain stickers, as well as a significant quantity of large bags, which contain the logos of three stores once operated by LGC, two of which are defunct. LGI disputes that "Apple Haus Bag" is an appropriate name for this bag given that Apple Haus is just one of three store logos on the bag (two of which were closed as of 2013). (*See* Ex. F, Prekop Dep. at 70:21-71:21.) LGI disputes the precise count of inventory of pie boxes and shopping bags received as Mr. Leva's statement in declaration is without foundation under Fed. R. Civ. P. 602. Precise numbers such as these would need to come from the contract or contemporaneous business records, which are not cited here.

23. Baldi acquired a number of banners, signage, and advertisements for use at the Long Grove Festivals including, but not limited to, a Festival banner stating: "Long Grove Apple Haus and Long Grove Confectionery" (the "Apple Haus Festival Banner"). Ex. D, ¶10, **Exhibit X**, picture of the Apple Haus Festival Banner; Ex. C, 46:2-47:22.

**RESPONSE**

Admitted for the purposes of summary judgment only that Baldi acquired one or both of the banners depicted as Exhibit X but disputes that the "Apple Haus Festival Banner" is an appropriate name for either of the Exhibit X banners. LGI further disputes the contention as to "a number of banners, signage, and advertisements," which is imprecise and inherently lacks sufficient specificity to admit or deny.

24. Baldi acquired the recipes for the baked goods LGC had been selling under the Apple Haus Mark including, but not limited to, the recipes for apple cider donuts, apple pie, and apple strudel. Ex. D, ¶13.

**RESPONSE**

LGI disputes this assertion. Baldi only purchased the assets identified in the Asset Agreement and the Intellectual Property Assignment. (*See* Ex. S and T (recipes not included in

11

"Purchased Assets" or mentioned in assignment); *see also* Ex. E, Leva Dep. at 31:15-33:2 (testifying that Baldi was informed by LGC prior to finalizing the Asset Agreement that "Apple Haus is not included in the sale").)

25.     The Long Grove Apple Haus sign that had been located on the exterior of the Apple Haus Store (the "Apple Haus Store Sign") was in LGC's warehouse at the time of Baldi's acquisition of LGC. Ex. D, ¶11, **Exhibit Y**, Apple Haus Store Sign; Ex. C, 51:24-52:17.

**RESPONSE**

LGI admits that the sign depicted at Exhibit Y was, at one point, located on the exterior of the Long Grove Apple House Building but disputes the assertion that the Apple Haus Store Sign was in LGC's warehouse at the time of Baldi's acquisition of LGC. Marsha Forsythe testified that her belief, based on her personal recollection and the fact that photographs associated with the auction included the sign on the building, is that the Apple Haus Store sign was on the outside of the Long Grove Apple Haus at the time of the 2014 auction. (Ex. M, Forsythe Dep. at 100:16-102:4, 111:21-114:18.)

26.     Baldi continued to employ all employees in the LGC art department and it acquired all of LGC's advertisements and promotional materials using the Apple Haus Mark. Ex. D, ¶12, **Exhibit AA**, advertisement using the Apple Haus Mark that were acquired by Baldi.

**RESPONSE**

Admitted for the purpose of summary judgment only that Baldi hired the employees in the LGC art department, that Baldi acquired the advertisements and promotional materials identified in Exhibit A. LGI disputes the assertion that Baldi "acquired all of LGC's advertisements and promotional materials using the Apple Haus mark." Mr. Leva's declaration statement that "Baldi acquired *all* advertisements and promotional materials that *had been created* by LGC's art department" is conclusory and speculative and is not admissible under Fed. R. Evid. 602. Mr. Leva had no involvement with LGC during the "LGC Period" and cannot

possibly know the full universe of "advertisements and promotional materials" created by LGC during the period of 1971-2013.

27.     The 2013 Strawberry Fest was held just eight days after Baldi's acquisition of LGC's assets. Baldi participated in the 2013 Strawberry Fest by setting up its festival tent outside of the LGC Store, displaying the Apple Haus Festival Banner, and selling Apple Haus baked goods under the Apple Haus Mark. Ex. D, ¶14.

**RESPONSE**

LGI admits for the purpose of summary judgment only that the 2013 Strawberry Fest was held shortly after Baldi purchased LGC and that Baldi participated in it, Baldi set up a tent between the LGC Store and the Apple Haus building, displayed one or more of the banners identified in Exhibit X, and sold one or more undefined baked goods. LGI disputes that the goods were sold "under the Apple Haus Mark," as not supported by reliable evidence. Mr. Leva's cited declaration is entirely conclusory and does not specify (i) what products were sold; (ii) how they were packaged; and (iii) how the Apple Haus mark was used, other than through display of one or more banners depicted in Exhibit X.

28.     Baldi has participated in every Long Grove Festival beginning in June 2013 through the present and, at those festivals, it always used the Apple Haus Festival Banner. Beginning with the 2015 Long Grove Festivals, Baldi set up a second Festival location for the exclusive sale of donuts, under the name "Donut Express." **Exhibit F**, Mary Prekop's Deposition Transcript, 99:15-106:24; Ex. D, ¶15; Ex. E, 136:6-139:19.

**RESPONSE**

Admitted that Baldi has participated in every Long Grove Festival since June 2013 and admitted for the purposes of summary judgment only that Baldi utilized one or more of the banners depicted on Exhibit X at each festival. LGI admits that Baldi has used "Donut Express" signage on tents at a separate location at the Long Grove Festivals but LGI disputes the assertion or implication that the APPLE HAUS mark is used in connection with the Donut Express location.

29. Baldi has sold baked goods including, but not limited to, apple cider donuts, strawberry donuts, apple pies, apple cider and fried pies under the Apple Haus Mark at every Long Grove Festival from June 2013 through the present. Ex. D, ¶16, **Exhibit Z**, pictures of the Apple Haus Mark applied to baked goods at the Long Grove Festivals; Ex. F, 99:15-106:24.

**RESPONSE**

Admitted for the purpose of summary judgment that Baldi has sold at least one baked good at every Long Grove Festival since June 2013. LGI disputes the remaining assertions in ¶ 29 as not supported by the cited evidence. Mr. Leva's testimony is self-serving and conclusory. He does not identify how specific products were packaged and how the APPLE HAUS name was used in connection with each product and how any such packaging or representation changed over time. Exhibit Z identifies certain products using stickers with the APPLE HAUS name on them but they (i) each depict a specific moment in a specific time and, as such, four photographs cannot support an assertion of use at eighteen festivals spanning six years and (ii) are undated. The fourth picture in Exhibit Z (BLD002373) was taken in the summer or fall of 2018, which is evidenced by the use of the newly-designed pie box, which Baldi asserts was designed in July 2018 (*See* SOF ¶ 43). This is an infringing pie box which has existed less than a year and, as such, does not support the assertion in ¶ 29.

30. Baldi has used the Apple Haus Bag at every Long Grove Festival for customers who purchased an apple pie or a large volume of goods. Ex. E, 103:15-111:23; Ex. F, 70:21-72:24.

**RESPONSE**

Admitted for the purposes of summary judgment only that Baldi has used the three-logo bag depicted in Exhibit V at Long Grove festivals.

31. Baldi displayed a variety of advertisements and banners promoting the Apple Haus Mark at the Long Grove Festivals. Ex. D, ¶17, Ex. AA; Ex. F, 99:15-106:24.

**RESPONSE**

Baldi admits for the purpose of summary judgment that the two signs depicted in Exhibit AA were displayed at the Long Grove Festivals. LGI denies that the banners were "promoting the Apple Haus Mark," which is a conclusion not a fact. LGI maintains that the banners were promoting pies and apple cider donuts, respectively. LGI further disputes the assertion that Baldi displayed "*a variety* advertisements and banners" as not supported by the evidence other than with respect to signs at Exhibit AA. Mr. Leva's testimony is imprecise and conclusory.

32.     Baldi generated the following gross sales at each Long Grove Festival:

|     |                       |             |
| --- | --------------------- | ----------- |
| a.  | 2013 Strawberry Fest: | $16,515.50  |
| b.  | 2013 Apple Fest:      | $41,551.50  |
| c.  | 2014 Chocolate Fest:  | $12,832.50  |
| d.  | 2014 Strawberry Fest: | $19,725.50  |
| e.  | 2014 Apple Fest:      | $50,292.00  |
| f.  | 2015 Chocolate Fest:  | $12,444.00  |
| g.  | 2015 Strawberry Fest: | $25,159.00  |
| h.  | 2015 Apple Fest:      | $50,101.00  |
| i.  | 2016 Chocolate Fest:  | $24,473.00  |
| j.  | 2016 Strawberry Fest: | $8,319.00   |
| k.  | 2016 Apple Fest:      | $50,086.00  |
| l.  | 2017 Chocolate Fest:  | $5,800.00   |
| m.  | 2017 Strawberry Fest: | $17,519.00  |
| n.  | 2017 Apple Fest:      | $35,543.00  |

Ex. D, ¶¶25-26, **Exhibit EE**, Baldi's Sales Registers for each of the above Long Grove Festivals.

**RESPONSE**

Admitted for the purposes of summary judgment only that Baldi's total sales at each of the Long Grove festivals are as stated in ¶ 32. LGI dispute the assertion or implication that these sales all relate to products sold under the name APPLE HAUS.

33.    Upon the acquisition of LGC's assets, Baldi took over and continued operating the LGC Store and LGC Outlet and selling frozen apple pies in the Apple Haus Pie Box at both locations. Ex. A, ¶18.

**<u>RESPONSE</u>**

Admit that Baldi took over and continued operating the LGC Store and the LGC Outlet and that some unstated amount of frozen apple pies were sold at each location. LGI admits that, from June 2013 until no later than September 30, 2013, said frozen pies were sold in the box identified in Exhibit U. After which, use of the Exhibit U box was discontinued.

34.    Baldi continued selling apple pies and apple cider to the Wholesale Customers and those sales continue to date. Ex. A, ¶20; Ex. C, 60:2-60:8.

**<u>RESPONSE</u>**

Admitted that Baldi continued to sell frozen apple pies and apple cider to Wholesale Customers. LGI disputes that these sales were related in any way to the APPLE HAUS name.

35.    In the fall of 2013, Baldi redesigned the Apple Haus Pie Box to state: "Long Grove's Ultimate Brown Bag Apple Pie" with a picture of the Red Apple pictured on the prior version of the Apple Pie Box. Ex. E, 73:24-77:23.

**<u>RESPONSE</u>**

LGI admits that by September 5, 2013 Baldi had redesigned its pie box. The newly designed pie box is depicted in Exhibit XX. It does not include the name APPLE HAUS but instead bears the Long Grove Confectionery logo, the words, Long Grove's Ultimate Brown Bag Apple Pie, and a red apple.

36.    Customers who purchased either an apple pie or a large quantity of products from either the LGC Store or the LGC Outlet would receive their goods and products in an Apple Haus Bag. Ex. E, 103:15-111:23; Ex. F, 70:21-72:24.

**RESPONSE**

Admitted only that the (very large) three-logo bad (including the names Long Grove Confectionery, Apple Haus, and Pine Cone Christmas Store) was maintained behind the counter at the LGC Store and LGC Outlet and, from time to time, customers' large purchases would be placed in the bag after the sale had occurred. LGI disputes the assertion or implication that this bag was used consistently with customers that had purchased pies.

37.     Certain employees at the LGC Outlet also wore an apron advertising and displaying the Apple Haus Mark. A photograph of an apron with the Apple Haus Mark is attached as **Exhibit G**. Ex. C, 49:11-51:11, 77:10-14; Ex. F, 74:24-75:16.

**RESPONSE**

LGI admits that 20 aprons in the design depicted in Exhibit G were acquired by Baldi in the Asset Agreement. (Ex. C, Hallan Dep at 49:11-51:11). LGI disputes that the apron is "advertising" the Apple Haus Mark and any implication that these aprons were used publically or for advertising purposes.

38.     On or about January 31, 2017, Baldi vacated the property that had been the location of the LGC Store (220 Robert Parker Coffin Road, Long Grove, Illinois 60047) due to the dilapidated condition of the property and disagreements with its landlord, Long Grove Investments ("LGI"). Ex. D, ¶18.

**RESPONSE**

Admitted that Baldi vacated the property at 220 Robert Parker Coffin Road on or about January 31, 2017 and that Baldi did not renew its lease. LGI disputes the characterization that the property was in "dilapidated condition," which is immaterial.

39.     On or about February 27, 2017 Baldi, through Kimball/Newport Properties, LLC, purchased the real property located at 114-128 Old McHenry Road, Long Grove, Illinois 60047, to open and operate a new retail location for Baldi to sell LGC and Apple Haus goods and products (the "New Long Grove Property"). Ex. D, ¶19.

**RESPONSE**

Admitted that Baldi purchased the property at 114-128 Old McHenry Road on or about February 27, 2017. Further admitted that Baldi intended the Old McHenry Road location to be a new retail location for the LGC store. LGI disputes the assertion that Baldi purchased the Old McHenry Road location with the intention of selling "Apple Haus" products.

40.     After a gut rehab of the New Long Grove Property, Baldi opened two new stores there: (a) a coffee shop (the "Coffee Shop"); and (b) a new LGC store with a commercial kitchen and bakery (the "New LGC Store"). The Coffee Shop opened in November, 2017 and the New LGC Store opened in December, 2017. Ex. D, ¶20.

**RESPONSE**

Admitted.

41.     In February, 2018, Baldi began operations at its commercial kitchen and bakery between the Coffee Shop and New LGC Store where it baked a variety of goods that are sold under the Apple Haus Mark including, but not limited to: muffins, cookies, strudels, pies, and donuts (the "Apple Haus Baked Goods"). Ex. D, ¶¶21-22, **Exhibits BB and CC**, pictures showing the Apple Haus Mark on display at the Coffee Shop and products bearing the Apple Haus Mark that are available for sale at the New LGC Store; Ex. C, 53:19-54:7, 54:18-55:1.

**RESPONSE**

Admitted.

42.     The Coffee Shop sells Apple Haus Baked Goods on the counter and in glass-casing, and the New LGC Store has a section devoted to Apple Haus Baked Goods. The Apple Haus Sign is also on display at the New LGC Store. Ex. D, ¶¶22-23; **Exhibit DD**, picture of The Apple Haus Sign on display at the New LGC Store; Ex. C, 51:24-52-14; 67:24-68:17.

**RESPONSE**

Admitted.

43.     In or about July 2018, Baldi re-designed the apple pie box to include the Apple Haus Mark and the Red Apple (the "Current Apple Haus Pie Box"). A picture of the Current Apple Haus Pie Box is attached as **Exhibit H.** Ex. E, 58:1–58:14; 89:18-90:4.

**RESPONSE**

Admitted.

44.     Unbeknownst to Baldi at the time, John Mangel, through BG Investments, LLC ("BG Investments"), filed an application to register the trademark "Long Grove Apple Haus" on August 26, 2013, approximately one month after selling LGC to Baldi. Ex. E, 42:14-43:10.

**RESPONSE**

Admitted.

45.     On or about January 16, 2017, the United States Patent and Trademark Office declared BG Investments' trademark for Long Grove Apple Haus abandoned and dead for reason of nonuse. Ex. B, ¶9.

**RESPONSE**

Admitted that on Jan. 17, 2017, the United States Trademark Office issued a notice of

abandonment of App. Ser. No. 86/047,509 owned by BG Investments, LLC which stated that

"the trademark application identified below was abandoned because the applicant failed to fine

for a statement of use or an extension of time." Ex. JJ.

46.     In May 2017, Baldi filed an application in the United States Patent and Trademark Office ("USPTO") to register the trademark "Long Grove Apple Haus" in connection with candied fruits, jellies, jams, fruit preserves butter, soup, and cheese (International Class 29), and coffee, coffee beans, packaged ground coffee beans, tea, candy, fudge, popped popcorn, chocolate sauce, cookies, bakery desserts, pastries, and pies (International Class 30). Ex. B, ¶10; **Exhibit II**.

**RESPONSE**

Admitted that on May 11, 2017 Baldi filed an application to register the trademark

LONG GROVE APPLE HAUS but LGI disputes that Baldi filed an application in international

classes 29 and 30. As set forth in the cited Exhibit II, Baldi applied for the trademark stating a

bona fide intention to use the mark in connection with coffee, coffee beans, packaged ground

coffee, tea, candy, fudge, popped popcorn, candied fruit, chocolate sauce, cookies, bakery

desserts, pastries, pies, jellies and jams, preserves, butter, soup, and cheese. Bald did not specify

the international class to which these goods pertained and paid the fee for a single-class

registration. On August 31, 2017, Baldi amended its application to classify the claimed goods in International Class 29 and 30.

47.    On November 8, 2017, LGI filed a Notice of Opposition to Baldi's application to register the Apple Haus Mark. Ex. B, ¶11.

**RESPONSE**

Admitted.

48.    After the close of discovery and on the eve of the dispositive motion deadline, LGI filed the instant lawsuit and moved to suspend the trademark action under Section 2.117 of the Trademark Rules of Practice, 37 CFR § 2.117. Ex. B, ¶¶12-14.

**RESPONSE**

Admitted that, on August 2, 2018, LGI moved the Trademark Trial and Appeal Board to suspend the opposition pending civil action as provided for by 37 CFR § 2.117. LGI disputes the assertion or implication that LGI's motion was improper, untimely, or indicative or suggestion of anything. The motion was granted and any characterization of the timing of the motion is (i) not a fact and (ii) immaterial.

49.    On or about July 23, 1976, Upper Avenue National Bank of Chicago, as Trustee under the provision of a trust agreement dated July 23, 1976, known as Trust Number 14-0316 ("Upper National Bank"), acquired the property commonly known as 230 Robert Parker Coffin Road, Long Grove, Illinois 60047 (the "Property"), via a Deed in Trust from Diana A. Ritchie, a spinster. **Exhibit I**, July 28, 1976, Deed in Trust that was recorded in the Lake County Recorder of Deeds office on August 4, 1976.

**RESPONSE**

Admitted.

50.    On or about July 8, 1999, Chicago Title Land Trust Company acquired the Property via a Trustee's Deed in Trust from American National Bank and Trust Company of Chicago, f/k/a Upper National Bank. **Exhibit J**, July 8, 1999, Trustee's Deed in Trust that was recorded in the Lake County Recorder of Deeds office on August 27, 1999.

**RESPONSE**

Admitted.

51.     On or about January 24, 2007, GCP Long Grove, LLC, acquired the Property from Chicago Title Land Trust Company via a Trustee's Deed. **Exhibit K**, January 24, 2007, Trustee's Deed that was recorded in the Lake County Recorder of Deeds office on April 27, 2007.

**RESPONSE**

Admitted.

52.     On November 5, 2012, GCP Long Grove LLC is believed to have defaulted on its financial obligations, causing it to transfer the Property to U.S. Bank National Association, as Trustee, as successor in interest to Bank of America, National Association, as Trustee, as successor by merger to LaSalle Bank National Association, as Trustee for the registered holders of Bear Stearns Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificate, 2007-PWR15 ("U.S. Bank") via a Special Warranty Deed. **Exhibit L**, November 5, 2012, Special Warranty Deed that was recorded in the Lake County Recorder of Deeds office on November 11, 2012.

**RESPONSE**

Admitted.

53.     Shortly prior to July 24, 2014, Marsha Forsythe ("Forsythe"), a soon to be Manager of Long Grove Investments, LLC ("LGI"), participated and was the high bidder in an on-line auction to purchase twelve commercial properties in Long Grove, Illinois, including the Property, (collectively the "Shoppes of Long Grove") for a total sum of One Million Three Hundred Twenty Five Thousand Dollars ($1,325,000). **Exhibit M**, Forsythe Deposition Transcript, 76:17-79:8.

**RESPONSE**

Admitted.

54.     On or about July 24, 2014, Forsythe and U.S. Bank executed an Agreement of Purchase and Sale and Joint Escrow (the "Purchase Agreement") for the sale of the Shoppes of Long Grove to Forsythe. The Purchase Agreement specified that Forsythe was purchasing the Property "as is, where is, with all faults and limitations" and in its then present state and condition. **Exhibit N**, Purchase Agreement; Ex. M, 74:19-76:13.

**RESPONSE**

Admitted.

55.     On September 4, 2014, LGI acquired the Property via a Special Warranty Deed from U.S. Bank. **Exhibit O**, September 4, 2014, Special Warranty Deed that was recorded in the Lake County Recorder of Deeds office on September 4, 2014.

**RESPONSE**

Admitted.

56.     LGI was formed on July 30, 2014, for the specific purpose of acquiring the Shoppes of Long Grove. Ex. M, 27:1-27:6, 30:9-30:13.

**RESPONSE**

Admitted.

57.     LGI is a real estate investment firm whose sole business is managing and renting the Shoppes of Long Grove. LGI's sole source of revenue is the rent it receives from the tenants of the Shoppes of Long Grove. LGI does not operate a business out of any of the twelve stores located in the Shoppes of Long Grove. Ex. M, 27:1-27:6, 30:9-30:13.

**RESPONSE**

Denied in that the citations do not establish this fact. The fact is admitted as correct but

immaterial to the motion.

58.     LGI has never sold or offered for sale any goods or products. Consequently, LGI has never sold or offered for sale any goods or products with the Apple Haus Mark or using that mark. **Exhibit P**, LGI's Objections and Responses to Defendant's First Request to Admit Facts, Nos. 7-8; **Exhibit Q**, LGI's Supplemental Objections and Responses to Defendant's First Set of Interrogatories, No. 12; Ex. M, 193:14-197:10.

**RESPONSE**

Admitted that LGI has never itself offered for sales any goods or products, whether or not

affixed with the name APPLE HAUS.

59.     LGI claims that when it acquired the Property where the former Apple Haus Store was located, it acquired common law rights in the Apple Haus Mark because the auction referred to the Property as "known as the Apple Haus," and because the Property is allegedly known by the public as the Long Grove Apple Haus. Ex. M, 79:9-82:15.

**RESPONSE**

Admitted that LGI acquired the rights to the LONG GROVE APPLE HAUS Mark when

it purchased the Long Grove Apple Haus building but LGI disputes that ¶ 59 includes a complete

and accurate summation of LGI's claims.

60.     LGI claims that, by acquiring the physical building, the history and goodwill associated with the Property automatically transferred to LGI as part of the purchase because the

Apple Haus Mark stayed with the building and whoever owned the building owned the mark. Ex. M, 79:9-82:15.

**RESPONSE**

Admitted that LGI acquired the goodwill associated with the Long Grove Apple Haus Building, including the rights to the LONG GROVE APPLE HAUS Mark, when it purchased the Long Grove Apple Haus building. LGI disputes that ¶ 60 includes a complete and accurate summation of LGI's claims.

61.     In marketing the Property for rent, LGI allegedly identified the Property as being "known as the Apple Haus." Ex. M, 116:24-118:8.

**RESPONSE**

LGI admits that it has marketed the Long Grove Apple Haus building for rent as being called or known as the Apple Haus and the Long Grove Apple Haus.

62.     LGI claimed that it would entertain any person or entity interested in renting the Property, and had discussions with a number of restaurants, including a breakfast restaurant and a barbeque restaurant, about leasing the space. Ex. M, 134:10-137:23.

**RESPONSE**

Admitted that LGI would entertain any person or entity interested in renting the Long Grove Apple Haus building and that numerous people have expressed interest in renting the Long Grove Apple Haus, including a breakfast restaurant and a barbeque restaurant. LGI disputes any assertion or implication that LGI turned away lessees or otherwise failed to mitigate damages. Leases were not consummated, in part due to the fact that use of the Long Grove Apple Haus building as a restaurant "is difficult because of the layout and the square footage." The majority of the square footage of the Long Grove Apple Haus is a "massive" commercial kitchen on the lower floor of the build. "It was meant to be a bakery." (Ex. M, Forsythe Dep. at 132:14-134:23.)

63.     In January of 2016, LGI entered into a lease with Bell's Apple Orchard and Bakery LLC d/b/a Bell's Apple Haus ("Bell's"), which intended to open a store at the Property called Bell's Apple Haus. Ex. M, 140:3-142:6.

**RESPONSE**

Admitted.

64.     On February 19, 2016, the Chicago Tribune published an article about Bells intention to open a store in the former location of the Apple Haus Store to be called "Bell's Apple Orchard and Bakery." The Chicago Tribune article acknowledged that LGC had been the owner of the Apple Haus Store and still brings its products to the Long Grove Festivals, where crowds generally wait in long lines to buy them. **Exhibit R**, February 19, 2016 Chicago Tribune article.

**RESPONSE**

Admitted that Exhibit R includes a February 19, 2016 article written by Ronnie Wachter

of the Pioneer Press but disputes the factual assertions in the article as summarized by ¶ 64. The

facts within the article are hearsay without exception and are, regardless of admissibility, not

accurate. This is apparent, at least, as the statement that the bakery was "to be called 'Bell's

Apple Orchard and Bakery'" conflicts with the admittedly undisputed fact that the bakery was to

be called Bell's Apple Haus. ¶ 64. Moreover, what the "the Chicago Tribute acknowledged" is

immaterial to this case.

65.     LGI terminated its lease with Bell's after Bell's began renovations without LGI obtaining necessary permits from the Village of Long Grove. Ex. M, 147:1-148:11.

**RESPONSE**

Admitted that LGI terminated the lease with Bell's after Bell's "didn't fulfill [its]

obligations with regard to the lease" due to "doing renovations without a permit [from the

Village of Long Grove] inside the building." (Ex. M, Forsythe Dep. at 147:6-148:2.)

66.     On August 28, 2017, LGI entered into a lease for the Property with Steve Sintetas d/b/a Long Grove Apple Haus ("Sintetas"), who intended to open a store at the Property called Long Grove Apple Haus. Ex. M, 150:23-154:22.

**RESPONSE**

Admitted.

67.     Sintetas has not opened a store at the Property and is waiting for this case to be resolved. Ex. M, 155:12-155:24.

**RESPONSE**

Admitted.

68.     LGI has never registered the Apple Haus Mark with the USPTO or attempted to register the Apple Haus Mark with the USPTO. Ex. P, Nos. 2-3.

**RESPONSE**

Admitted.

69.     The Property was vacant at the time LGI purchased the Property. Ex. M, 111:21-111:23.

**RESPONSE**

Admitted.

## II.     **LGI'S STATEMENT OF ADDITIONAL FACTS**

1.     Historic Downtown Long Grove, part of the Village of Long Grove, Illinois, was Illinois's first historic district. (Ex. 16, Historic Downtown Long Grove, http://longgrove.org/ (last visited May 23, 2019).) Home of three annual festivals, Historic Downtown Long Grove is a tourist destination and is important to the survival of Long Grove as a village. (Ex. M, Forsythe Dep. at 24:1-8.)

2.     The building at 230 Robert Parker Coffin Road (the "Building") is commonly known as and referred to as the "Apple Haus" or the "Long Grove Apple Haus." Those that refer to the building as the "Apple Haus" include Baldi's own employees. Tens of thousands of festival-goers from around the country know the Long Grove Apple Haus building. (Dkt. 33, Ex. C, Hallan Dep. at 88:21-90:3; Ex. E, Leva Dep. at 203:7-204:19; Ex. M, Forsythe Dep. at 80:15-81:5, 124:19-127:7, 202:22-204:10.)

3.      The Building, located in the center Historic Downtown Long Grove, is a well-recognized and historically significant building. The Building is in the center of downtown, right off of Fountain Square. (Ex. M, Forsythe Dep. at 126:17-21.)

4.      From 1977 through 2011, the Building was home to a bakery, called the Apple Haus. The Apple Haus retail location was owned and operated by Long Grove Confectionery Co., which was owned by John Mangel. It closed in 2011. (Ex. C, Hallen Dep. at 30:10-23; Ex. E, Leva Dep. at 11:6-15 and 17:8-19:24.)

5.      Since 2011, the Building has been vacant. Although efforts have been made to utilize the Building as a restaurant or other retail location, the footprint and design of the building limits its marketability for uses other than as a bakery. (Ex. M, Forsythe Dep. at 131:12-133:17)

6.      Ever since the Apple Haus bakery closed, the Long Grove community and festival goers have asked for the Apple Haus to return. A common question asked to Long Grove Village business owners is "Where is the Apple Haus?" (Ex. M, Forsythe Dep. at 125:1-6; Ex. R.; Ex. E, Leva Dep. at 40:3-6.)

7.      Baldi first had substantive discussions with John Mangel regarding the sale of the Long Grove Confectionery Co. business on Thursday, June 6, 2013. By Monday, June 10, 2013, Baldi and Mangel had agreed in principle to the terms of the Long Grove Confectionery Co. business. By Wednesday, June 12, the deal was finalized and the contracts (which were retroactive to June 10) were signed. From inception to closing, the deal took less than one week. (Ex. E, Leva Dep. 17:8-19:24.)

8.      Baldi's purchase of assets from LGCC/Mangel was motivated by a desire to obtain additional manufacturing capacity; LGCC/Mangel's retail operations were "a small little

side venture" tangential to the transaction. (Ex. E, Leva Dep. 13:2-13; 20:18-21:13, 24:10-25:13.)

9.      At the time Baldi purchased assets of LGCC/Mangel, Baldi was unaware of whether the Long Grove Apple Haus name was being used in LGCC/Mangel's business. (Ex. E, Leva Dep. at 24:2-9.)

10.      An Asset Purchase Agreement ("Asset Agreement") and an Intellectual Property Assignment ("IP Assignment") are the only agreements between Baldi and LGCC/Mangel relating to the transfer of intellectual property. The two documents were signed contemporaneously and are coextensive as it relates to intellectual property. (Ex. S (Asset Agreement); Ex. T (IP Assignment); Ex. 2, Baldi's Resp. to Request to Admit, ¶ 1; Ex. E, Leva Dep. at 30:19-31:4, 40:6-11.)

11.      Schedule 4.6 of the Asset Purchase Agreement, which contains a complete list of all trademarks purchased by Baldi in connection with the Asset Purchase Agreement, does not include the LONG GROVE APPLE HAUS Mark. Baldi's corporate representative admits that Schedule 4.6 contains "a complete list of trademarks conveyed" in the transaction with LGCC/Mangel. (Ex. S, at ¶ 4.6 and Schedule 4.6; Ex. 2, Baldi's Resp. to Request to Admit, ¶ 8; Ex. E, Leva Dep 37:16-37:17.)

12.      Schedule A of the Intellectual Property Assignment, which includes a list of all trademarks assigned by LGCC/Mangel to Baldi, does not include the LONG GROVE APPLE HAUS Mark. (Ex. T, IP Assignment at Schedule A; Ex. 2, Baldi's Response to Request to Admit ¶ 15.)

13.      The only mention of "AppleHaus" in the Asset Purchase Agreement or Intellectual Property Assignment is in Schedule 4.5 of the Asset Purchase Agreement, which

uses the name "AppleHaus" to refer to a "closed division" of Seller LGCC/Mangel. The phrase "Long Grove Apple Haus" does not appear in either the Assert Purchase Agreement or the Intellectual Property Assignment. (Ex. S, Asset Agreement at Schedule 4.5; Ex. 2, Baldi's Response to Request to Admit ¶¶ 10, 16, 26.)

14. Baldi was explicitly informed by LGCC/Mangel, prior to finalizing the Asset Agreement and IP Assignment, that the "Apple Haus is not included in the sale." Baldi did not believe that the trademark "LONG GROVE APPLE HAUS" was included in the transaction. Two other Apple-Haus-related trademarks, UNCLE JOHNNY'S and BABY DAVY'S were specifically identified as "Excluded Assets." Baldi's corporate representative testified that Baldi did not own a trademark in the name APPLE HAUS or LONG GROVE APPLE HAUS as a result of the transaction with LGCC/Mangel. (Ex. E, Leva Dep. at 31:15-33:18; 42:3-43:9; Ex. S, at ¶ 1.3.)

15. On August 26, 2013 BG Investments, LLC filed with the United States Patent and Trademark Office an intent-to-use application to register the mark LONG GROVE APPLE HAUS in connection with "jellies and jams" in International Class 29 and "bakery desserts, pastries, and pies" in International Class 30. John Mangel signed the application and submitted a declaration, stating under penalty of perjury that to the best of his knowledge "no other person, firm, corporation, or association has the right to use the mark in commerce…" (Ex. II.)

16. Baldi did not file its own application to register the LONG GROVE APPLE HAUS mark until after it learned that Mr. Mangel's company abandoned its intent-to-use application. (Ex. E, Leva Dep. at 45:7-17.)

17. By September 5, 2013, within two months of Baldi's acquisition, Baldi had already redesigned its pie box to a design including the words "Long Grove's Ultimate Brown

Bag Apple Pie" and the Long Grove Confectionery Logo. The newly-designed pie box did not use the LONG GROVE APPLE HAUS mark.



(Ex. 3, C.Leva 6; Ex. 4, C.Leva 9; Ex. E, Leva Dep. at 54:2-55:5, 59:21-60:1; 69:17-20).

18.     On September 27, 2013, Baldi ordered 10,000 units of the newly-designed pie box. Baldi began use of the newly-designed pie box when the purchased-supply of pie boxes was exhausted, which was "probably immediately" after the boxes were delivered in October 2013. By September 2014, Baldi had already ordered an additional 10,000 of the newly-designed pie boxes to replenish its initial supply of 10,000 units. (Ex. 5, C.Leva 10; Ex. 6, C.Leva 12, Ex. E, Leva Dep. at 53:3-20; 56:8-16; 70:8-72:5,77:12-23; 79:18-80:6; Ex. M, Forsythe Dep. at 213:13-24).

19.      Baldi's decision to change its pie box form LONG GROVE APPLE HAUS to the newly-designed pie box, which utilized the LONG GROVE CONFECTIONERY AND DESIGN mark and the words "Long Grove's Ultimate Brown Bag Apple Pie" but not the LONG GROVE APPLE HAUS name, was an intentional branding decision to promote the wholesale brand – Long Grove Confectionery – to both wholesale and retail consumers. Among Baldi's wholesale customers is Lou Malnati's, for the purpose of sale through its Tastes of Chicago catalog. The Malnati's Tastes of Chicago catalog sells Baldi products in interstate commerce. (Ex. E, Leva Dep. at 58:23-59:18, 121:1-25.)

20.     From October 2013 until the pie box was redesigned in July 2018, the newly designed box – without the name APPLE HAUS or LONG GROVE APPLE HAUS – was used with all sales of pies by Baldi, whether fresh or frozen, retail, wholesale, or festival. (Ex. E, Leva Dep. at 53:3-54:7, 59:21-60:9, 113:4-114:21, 124:8-20, 128:18-129:3.)

21.     Baldi likewise ceased use of the LONG GROVE APPLE HAUS name on cider products shortly after purchasing Long Grove Confectionery from Mangel. The decision to switch branding on cider was made at the same time the decision to switch branding on pie boxes was made. The new cider labels (without the APPLE HAUS or LONG GROVE APPLE HAUS name) began use when the initial inventory of cider labels were exhausted, which was "similar" in timing to the redesign of the pie box in fall of 2013. (Ex. E, Leva Dep. 126:1-128:15.)

22.     Until the end of 2017, when the Old McHenry Road location was opened, Baldi did not sell baked goods (other than frozen pies) in either its Long Grove Confectionery retail store or its Buffalo Grove outlet. To the extent Baldi made any sales of donuts, strudel, turnovers, fritters, breads, or cookies (whether or not labeled with the APPLE HAUS name) between June 2013 and December 2017, the sales were made only at Long Grove Festivals. (Ex. E, Leva Dep. at 116:4-118:22.)

23.     Baldi asserts that it has used a bag with the APPLE HAUS name on it from 2013-present. This bag, which was characterized at deposition as "massive," has the logos of three stores on it – Long Grove Confectionery, the long-closed Apple Haus retail bakery, and Pine Cone Christmas Shop, another long-closed business formerly owned by Mangel. These three-logo bags were used post-sale (after checkout) and only with purchases that had made an unusually large purchases. Baldi has other bags for post-sale use with customers, including several bags with the Long Grove Confectionery name and logo on them. The use of the three-

30

logo bag is intended to exhaust packaging supply originally received in the transaction with LGCC/Mangel, which Baldi's corporate representative testified was "obsolete." Notably, during the period in which the three-logo bags were in use, there were one or more other Christmas stores operating in Historic Downtown Long Grove, including one that may have been named "Pine Cone," and there were "no fights" about the continued use of Pine Cone Christmas Store on the three-logo bag. (Ex. E, Leva Dep. 104:8-106:5, 107:1-108:5, 110:15-111:3; Ex. V, Three-Logo Bag; Ex. 1, Forsythe Declaration, ¶¶ 6-7.)

24.    Baldi's use of the LONG GROVE APPLE HAUS name at Long Grove Festivals between 2014-2016 was licensed by LGI. The Building is prominently located in Historic Downtown Long Grove and in the center of the Long Grove Festival area. For this reason, and because of its strong goodwill with Long Grove residents and visitors, the Long Grove Apple Haus has always played a large role at Long Grove Festivals. In 2014, Baldi's Craig Leva asked LGI's Marsha Forsythe if Baldi could rent the kitchen in the Building for use during the festivals. LGI denied Baldi's request to rent the kitchen but discussed Baldi using the LONG GROVE APPLE HAUS name at festivals. LGI specifically licensed and authorized the use of the name, until such time as LGI had a tenant in the Building. LGI is only aware of Baldi using the name Long Grove Apple Haus at one festival in 2014 and three festivals in 2015, after LGI's purchase of the Building. Until 2017, Baldi's main tent at Long Grove Festivals was located next to the Building. The second festival location, the Donut Express stand, did not use the LONG GROVE APPLE HAUS name. (Ex. E, Leva Dep. 132:20-133:23, 137:12-138:3, Ex. M, Forsythe Dep. at 128:12-129:4, 158:8-162:12, 165:11-173:10, 175:5-177:24, 197:18-198:2, 198:11-199:21, 242:12-245:5; Ex. 1, Forsythe Declaration ¶¶ 4-5.)

25.     After Baldi terminated its lease with LGI and before it opened its new store on Old McHenry Road at the end of 2017, Baldi "made a decision" to change its brand away from Long Grove Confectionery to the LONG GROVE APPLE HAUS name. (Ex. E, Leva Dep. at 63:10-64:7.)

26.     Baldi believed that using the LONG GROVE APPLE HAUS name at the Old McHenry Store would "bring more excitement" than using the Long Grove Confectionery mark and "attract some additional traffic" to the store. Specifically, Baldi "felt that people who were connected to the Village of Long Grove would be really excited to have a version of the Apple Haus back in the Village." For the first time since June 2013, Baldi utilized APPLE HAUS and LONG GROVE APPLE HAUS name and signage within its retail and outlet store locations. Baldi even uses the sign formerly located on the Building, which it claims to have found in its warehouse, and welcomes customers to the supposed "Original" Long Grove Apple Haus. Subsequent to January 2018, Baldi changed the listing for its retail store to "Long Grove Confectionery and Apple Haus" where it had previously just been "Long Grove Confectionery." Similarly, the Long Grove Apple Haus Facebook page has no posts between June 2013 and February 2018. (Ex. E, Leva Dep. at 64:10-65:21, 132:16-133:9, 171:1-173:24, 174:20-175:21; Ex. 18, C.Leva 31; Ex. 17, Long Grove Apple Haus Facebook post; Ex. 1, Forsythe Declaration ¶ 7.)

27.     In or around July 2018, Baldi redesigned its pie box, placing the LONG GROVE APPLE HAUS name on its pie box for the first time since 2013. After a number of revisions and back-and-forth correspondence with the supplier, Baldi received its first shipment of the new "2018 Pie Boxes" in September 2018. This pie box includes the LONG GROVE APPLE HAUS name, was first used at Apple Fest in September 2018 and is currently being used by Baldi.



(Ex. H, 2018 Pie Box; Ex. 7, C.Leva 7; Ex. 8, C.Leva 16; Ex. E, Leva Dep at 87:22-93:9, 124:16-125:14.)

28.     Baldi also redesigned its stickers and labels in 2018 to make use of the APPLE HAUS and LONG GROVE APPLE HAUS name. (Ex. 9, C.Leva 20, Ex. E, Leva Dep. at 101:14-102:8.)

29.     On May 11, 2017, Baldi filed with the United States Patent and Trademark Office ("USPTO") an intent-to-use application to register the LONG GROVE APPLE HAUS name as a trademark in connection with coffee, coffee beans, packaged ground coffee, tea, candy, fudge, popped popcorn, candied fruit, chocolate sauce, cookies, bakery desserts, pastries, pies, jellies and jams, preserves, butter, soup, and cheese. Baldi's representative submitted a declaration to the USPTO attesting that Baldi had a bona fide intention to use the LONG GROVE APPLE HAUS mark in commerce. Baldi did not indicate to the USPTO that the LONG GROVE APPLE HAUS Mark was already in use in commerce. LGI filed an opposition to Baldi's LONG GROVE APPLE HAUS on November 8, 2017. (Ex. II; Ex. 2, Baldi Resp. to Reqs. to Admit at ¶¶ 39-43; Ex. B, ¶ 11).

30.     In July 2014, LGI purchased, among other properties, the Building. The physical description of the property in LGI's auction packet refers to the Building as being "known as the Apple Haus Building." Since acquiring the Building, LGI has marketed the Building as being called or known as the Apple Haus or the Long Grove Apple Haus. LGI would entertain any

person or entity interested in renting the Building and has had discussions with a number of restaurants, including a breakfast restaurant and barbeque restaurant about leasing the space. The discussions with restaurants have not led to any contracts to rent, in part because the Building is ideally-designed to be a commercial bakery. It features a large commercial kitchen on the lower floor, which makes up the majority of the square footage of the building. The floor plan is not ideal for a restaurant. (Ex. N; Ex. M, Forsythe Dep. at 80:10-14, 116:22-122:24, 124:19-127:7,128:5-11, 130:11-137:23; Ex. 10, Forsythe 3; Ex. 11, Forsythe 8.)

31.     In 2014, contemporaneously with the purchase of the Building, LGI purchased 220 Robert Parker Coffin Road. At this time, Baldi was operating a retail store called the Long Grove Confectionery located at 220 Robert Parker Coffin Road. After the purchase, LGI became Baldi's landlord. (Ex. E, Leva Dep. at 139:14-22; Ex. M, Forsythe Dep. at 128:5-11.)

32.     Baldi's Craig Leva was aware of LGI's intent to revive the "Apple Haus" in Long Grove from the time LGI purposed the building. In 2014, LGI Member Mike Okun reached out to Leva about partnering with LGI to "reopen the Apple Haus." Leva acknowledged in his deposition that "when [LGI] bought the property, they were very interested in reviving" the Long Grove Apple Haus but, at the time, he "wasn't interested in partnering with them or with anybody to open up Apple Haus." (Ex. E, Leva Dep. at 209:6-211:10.)

33.     In January of 2016, LGI entered into a lease with Bell's Apple Orchard and Bakery LLC d/b/a Bell's Apple Haus ("Bell's"), which intended to open a store at the Building called Bell's Apple Haus. The lease required the business to be named Bell's Apple Haus. (Ex. 12, Forsythe 9 at 1.1.6 and 9.1.2.)  LGI terminated its lease with Bell's after Bell's did not fulfill its obligations under the lease, including conducting renovations and modifications to the

Building without having obtained a permit from the Village of Long Grove. (Ex. M, 140:3-142:6, 147:1-148:11; Ex. 12, Forsythe 9.)

34.     Baldi was aware of LGI's lease with Bell's and felt threatened by the prospect of additional competition and by the loss of the revenue festival revenue once it was no longer authorized to use the LONG GROVE APPLE HAUS Mark at festivals. In February 2016, Leva wrote to Forsythe that he was disappointed that LGI had rented out space to a company that would be a "direct competitor" to Baldi's Long Grove Confectionery. Leva acknowledged as follows: "Although I know from our previous discussions that you have been very interested from the get-go in reviving Apple Haus in Long Grove, you should also know that the net effect of the Long Grove Confectionery will most likely be a negative one." Forsythe's response stated that LGI "was hopeful that The Confectionary [sic] and The Apple Haus can co-exist as the two did in the past prior to either of us being involved." Leva made no claim of ownership to the LONG GROVE APPLE HAUS mark in this exchange. (Ex. 11, Forsythe 8.)

35.     On August 28, 2017, LGI entered into a lease for the Property with Steve Sintetas d/b/a Long Grove Apple Haus ("Sintetas"), who intends to open a store at the Property called Long Grove Apple Haus. The lease required the business to be named the Long Grove Apple Haus. (Ex. 13, Forsyth 10, 1.1.6 and 9.1.2.) Sintetas has not opened a store at the Property and is waiting for this case to be resolved. (Ex. M, Forsythe Dep. at 150:23-154:22, 155:12-155:24, 216:9-217:6; Ex. 13, Forsythe 10.)

36.     Baldi's unauthorized use of the LONG GROVE APPLE HAUS name in connection causes confusion within the marketplace and is preventing LGI from leasing its property. (Ex. 14, Forsythe 19; Ex. 15, Forsythe 20; Ex. M, Forsythe Dep. at 222:7-231:22, Ex. 17.)

Dated: May 24, 2019                    Respectfully submitted,

                                  **LONG GROVE INVESTMENTS, LLC**

                                  By: /s/ Richard T. Kienzler
                                         One of its attorneys

                                  Richard T. Kienzler
                                  Jeffrey J. Catalano
                                  Freeborn & Peters LLP
                                  311 South Wacker Drive, Suite 3000
                                  Chicago, Illinois 60606
                                  Phone: (312) 360-6000
                                  Email: rkienzler@freeborn.com
                                         jcatalano@freeborn.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on the date show below, he caused a copy of the foregoing document to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, which will generate a notice of filing a deliver a copy of the document upon all counsel of record.

Dated: May 24, 2019                    /s/ Richard T. Kienzler