UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LONG GROVE INVESTMENTS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>BALDI CANDY CO.,<br><br>    Defendant. | Case No. 18-cv-5237<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Long Grove Investments, LLC owns a building in Long Grove, Illinois, in which a beloved bakery, the Long Grove Apple Haus, once thrived, selling goods such as apple pies and ciders. Plaintiff claims that by purchasing that building, it acquired rights in the name Long Grove Apple Haus and the associated trademark. It sues Defendant Baldi Candy Company, claiming that by setting up shop next door and selling goods bearing Plaintiff's mark, Defendant has violated the federal Lanham Act and the Illinois Deceptive Trade Practices Act. [1]. Defendant moves for summary judgment on Plaintiff's claims. [31]. For the reasons explained below, this Court grants Defendant's motion.

### I. Background

The facts in this section come from Defendant's statement of undisputed facts [33] and Plaintiff's statement of additional facts [42].

1

A.   The Apple Haus Store

The building at the center of this dispute sits in Long Grove, Illinois, at 230 Robert Parker Coffin Road (the Building). [37] ¶ 2. From 1977 through 2011, non-party Long Grove Confectionary Co. (LGC) owned and operated a bakery—the Long Grove Apple Haus (the Apple Haus Store)—at the Building. *Id.* ¶ 4; [33] ¶ 1. The Building has remained vacant since 2011. [37] ¶ 5.

Between 1977 and 2011, LGC sold various baked goods at the Apple Haus Store, including: apple pies, apple cider donuts, fritters, cookies, strudels, and apple butter. [33] ¶ 5. The parties agree that at least some of those products included the term APPLE HAUS on the label, packaging, or container. *Id.* ¶ 5. Additionally, for at least some time, LGC sold its apple pies in a box (the Apple Haus Pie Box); the Apple Haus Pie Box included the term APPLE HAUS and a design of a red apple with a stem and two leaves (the Red Apple):



*Id.* ¶ 6; [33-2] at 69. Between 1977 and 2011, LGC also sold apple cider (Apple Haus Cider) containers with labels depicting the term APPLE HAUS and the Red Apple:



[33] ¶ 6; [33-3] at 53.

In addition to the Apple Haus Store, LGC also operated two retail stores in North Suburban Chicago and sold apple pies in the Apple Haus Pie Box at both stores. [33] ¶¶ 8, 9. In addition, at various points between 1977 and 2011, LGC sold apple pies in the Apple Haus Pie Box and Apple Haus Cider to wholesale customers, including Lou Malnati's and Oberweis Diary. *Id.* ¶ 10. At times between 1977 and 2011, LGC also participated in three major outdoor festivals, each of which took place annually. *Id.* ¶ 11. During these festivals, LGC sold products bearing the term APPLE HAUS. *Id.* ¶ 12.

LGC closed the Apple Haus Store in December 2011. *Id.* ¶ 13. The Building has remained vacant ever since. [37] ¶ 5. After closing the Apple Haus Store, between December 2011 and June 2013, LGC continued selling applies pies in the Apple Haus Pie Box at its two other suburban retail stores, at the Long Grove festivals, and to its wholesale customers. [33] ¶¶ 14–15. During that time period, LGC also continued selling the Apple Haus Cider to at least one wholesale customer. *Id.*

### B. Defendant's Asset Purchase of LGC

Defendant maintains a confectionery business. *Id.* ¶ 16. In June 2013, Defendant and LGC entered into an asset purchase agreement (the Agreement), under which Defendant purchased certain assets, properties, and rights related to LGC's business. *Id.* ¶¶ 18–19. Upon acquiring LGC's assets, Defendant took over and continued operating LGC's North Suburban retail stores, selling frozen apple pies in the Apple Haus Pie Box at both locations. *Id.* ¶ 33.

In February 2017, Defendant purchased a new property located at 114-128 Old McHenry Road, Long Grove, Illinois. *Id.* ¶ 39. Later that year, Defendant opened two stores at the new property—a coffee shop, and a store with a commercial kitchen and bakery. *Id.* ¶ 40.

In February 2018, Defendant began operating its new coffee shop and the new store, where it sold baked goods bearing the term APPLE HAUS:



*Id.* ¶ 41; [33-2] at 87, 90.

### C. Plaintiff's Ownership of the Building

Plaintiff, a real estate investment firm, manages and rents properties, including stores in Long Grove. *Id.* ¶ 57. Plaintiff acquired the Building, via special warranty deed, in September 2014. *Id.* ¶ 55. Plaintiff has never itself sold any goods or products. *Id.* ¶ 58.

In August 2017, Plaintiff executed a lease for the Building with a Steve Sintetas, who intends to open a store there named "Long Grove Apple Haus." [37] ¶ 35. Sintetas has not yet opened the store and awaits the resolution of this case. *Id.*

In May 2017, Defendant filed an application with the United States Patent and Trademark Office (USPTO), seeking to register the trademark "LONG GROVE APPLE HAUS" (the Apple Haus Mark). [33] ¶ 46.

In November 2017, Plaintiff filed a notice of opposition to Defendant's application. *Id.* ¶ 47. That trademark dispute remains stayed pending this action. *Id.* ¶ 48.

### D. Building Ownership

In July 1976, Upper Avenue National Bank of Chicago acquired the Building via a Deed in Trust "from Diana A. Ritchie, a spinster." [33] ¶ 49. In July 1999, Upper National Bank deeded the Building to Chicago Title Land Trust Company, *id.* ¶ 50, who then deeded it to an entity named GCP Long Grove, LLC, in January 2007, *id.* ¶ 51. GCP Long Grove, LLC defaulted on its financial obligations in November 2012, and the Building's deed subsequently transferred to U.S. Bank National Association. *Id.* ¶ 52. In September 2014, Plaintiff acquired the property from U.S. Bank. *Id.* ¶ 55.

5

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). The non-moving party has the burden of identifying the evidence creating an issue of fact. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. Analysis

Defendant moved for summary judgment on Plaintiff's four-count complaint. [31]. In response, Plaintiff withdrew Count III of its complaint. [36] at 9 n.3. This Court thus proceeds to address the remaining counts in order below.

### A. Count I: Trademark Infringement

In Count I, Plaintiff alleges that Defendant has, and continues to, infringe upon its common law rights in the Apple Haus Mark by selling goods and services bearing the Apple Haus Mark. [1] ¶¶ 20–31.

#### 1. Governing Law

Plaintiffs may assert trademark infringement of unregistered trademarks under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). *Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 435 (7th Cir. 1999). To prevail on this claim, Plaintiff must prove that: (1) there exists a protectable mark; (2) Plaintiff owns the mark; and (3) Defendant's use of the mark is likely to cause consumer confusion. *Johnny Blastoff*, 188 F.3d at 436.

The parties only dispute the second element: ownership. As to this element, a party obtains a "protectable right in a trademark only through use of the mark in connection with its product." *Johnny Blastoff*, 188 F.3d at 433; *Purepecha Enterprises, Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *9 (N.D. Ill. Aug. 24, 2012). This "use" must be "continuous and bona fide," and "the mark must be attached to the product or service sold to the public." *Specht v. Google Inc.*, 758 F. Supp. 2d 570, 588 (N.D. Ill. 2010) (internal quotation omitted), *aff'd*, 747 F.3d 929 (7th Cir. 2014). Ownership only inheres where a party's use of the mark is "deliberate and continuous, not sporadic, casual or transitory." *Id.* (quoting *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054–55 (6th Cir. 1999)).

7

Moreover, the party who first uses a mark owns that mark. *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015) ("The party who first uses a mark in commerce is said to have priority over other users."); *see also* 2 McCarthy on Trademarks and Unfair Competition § 16:35 (5th ed. 2019) ("In the United States, ownership goes to the first to use a designation as a trademark, not to the first to register. This means that in the U.S., the rule of priority is that the party who was first to use a designation as a mark in the marketplace is the owner.").

### 2. Plaintiff Fails to Show Ownership

Defendant argues that Plaintiff does not own the Apple Haus Mark, because Plaintiff has failed to show any prior use in commerce, much less first use. [32] at 4–13.

Plaintiff concedes that it has never itself sold any goods or products, much less ones bearing the Apple Haus Mark. [33] ¶ 58. Thus, Plaintiff admittedly cannot demonstrate continuous use, or indeed any use, of the Apple Haus Mark. *See Specht*, 758 F. Supp. 2d at 588; *see also S Indus., Inc. v. Stone Age Equip., Inc.*, 12 F. Supp. 2d 796, 805 (N.D. Ill. 1998) (noting that "use must be continuous and bona fide to impart ownership"). Nor can Plaintiff demonstrate that it first used the Apple Haus Mark; rather, the parties agree—and the record confirms—that LGC did so. [33] ¶ 5.

Instead, Plaintiff attempts to overcome summary judgment by contending that it demonstrates ownership by purchasing "the building with which [the mark] is associated." [36] at 9–13. Plaintiff cites *Plitt Theatres, Incorporated v. American National Bank & Trust Company of Chicago*, 697 F. Supp. 1031 (N.D. Ill. 1988),

8

where the court observed that trademark ownership "passes impliedly with ownership of the pertinent building or business with which the mark is associated, absent express provision to the contrary." *Id.* at 1034–35. Relying upon this proposition, the court in *Plitt Theatres* held that each successive owner to the historic Esquire Theatre—beginning with the original owners who established the "Esquire" mark—passed its ownership rights to that mark when it sold the building to the next buyer. *Id.* at 1035. Critically, the court noted that the building's original construction included a marquee and vertical sign containing the name "Esquire," which has remained on the façade throughout time. *Id.* at 1032.

Plaintiff also cites *Helpful Hound, L.L.C. v. New Orleans Building Corporation*, 331 F. Supp. 3d 581 (E.D. La. 2018), where the court held that the City of New Orleans established continuous and prior use over the trademark "St. Roch Market" even though the City never actually operated a market, or any other type of food service, in the building housing the St. Roch Market. *Id.* at 598–99. The court reasoned that the City owned the building housing the market (which had been known as the "St. Roch Market" since the late 1800s), designed and built the market, chose its lessees, and significantly restored it after Hurricane Katrina. *Id.* at 598–99. The court thus rejected a food hall tenant's argument that it held priority over the City as to the "St. Roch Market" mark. *Id.* at 598.

But Plaintiff's reliance upon these cases is misplaced, because the circumstances here vastly differ from those in either *Plitt Theatres* or *Helpful Hound*. In both of those cases, the original property owners: (1) actually established first use

9

of the marks; and (2) demonstrated that they or their successive owners continuously used the marks at the properties. Indeed, in *Plitt Theatres*, the court underscored that the "original owners" of the Esquire Theatre established the "Esquire" mark; thus, when they transferred ownership to the building, they also transferred ownership rights in the mark to the subsequent buyers in an unbroken "chain." 697 F. Supp. at 1035. Likewise, the *Helpful Hound* court noted that the City of New Orleans had owned the property on which the St. Roch Market sits since the 1800s, and therefore the City, not lessees of the building, continuously owned the "St. Roch Market" mark. 331 F. Supp. 3d at 596, 598–99.

Here, in contrast to *Hungry Hound*, Plaintiff did not originally own the Building, but rather acquired it in 2014. [33] ¶ 55. Moreover, unlike both *Hungry Hound* and *Plitt Theatres*, the original owner of the Building did not create, or have any involvement with establishing, the Apple Haus Mark. Rather, the record remains clear that LGC, a tenant of the Building, did so by, among other things, selling products bearing the Apple Haus Mark. *Id.* ¶¶ 3–5. And finally, unlike in *Hungry Hound* and *Plitt Theatres*, where the owners demonstrated continuous use of the marks at the properties, the record here shows that: (1) the Building has remained vacant since 2011; and (2) Plaintiff has never used the Apple Haus Mark since it acquired the Building in 2014. [37] ¶ 5; [33] ¶ 58.

The facts here more closely resemble a case Defendant relies upon, *Russell Rd. Food & Beverage, LLC v. Galam*, 180 F. Supp. 3d 724 (D. Nev. 2016). There, the court held that the owner of the property where a former strip club—the "Crazy Horse Too"

10

club—was situated did not own the "Crazy Horse Too Mark." *Id.* at 735. The court reasoned that the owner failed to show that it acquired—through an assignment or otherwise—any rights to the mark, because it "purchased only the real property" upon which the club was built. *Id.* at 735–37. As such, no trademarks or good will passed to the new owner, because it simply acquired a building, not "a going concern" in commerce. *Id.* at 736–37; 3 McCarthy on Trademarks and Unfair Competition § 18:15 (5th ed.).

Similarly, Plaintiff merely purchased the Building. There remains no evidence that Plaintiff also acquired LGC's business or any of its intellectual property. And, neither Plaintiff nor this Court has located any authority suggesting that the mere purchase of real property that was once associated with a trademark in the past can confer ownership. Thus, Plaintiff fails to show ownership of the Apple Haus Mark. Because Plaintiff's infringement claim fails as to ownership, this Court grants summary judgment to Defendant on Count I.

**B. Count II: False Designation of Origin, False Advertising and Unfair Competition**

In Count II, Plaintiff asserts a claim under Section 43(a) of the Lanham Act, for conduct that constitutes "false designation of origin, false advertising and unfair competition." [1] ¶ 36.

As a preliminary matter, Section 43(a) claims proceeding under theories of "false designation of origin" and "unfair competition" mirror those for a trademark infringement claim. *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Thus,

11

Plaintiff must show, among other things, that it holds a protected right in the Apple Haus Mark to prevail under these theories. *Rumsey*, 829 F.3d at 822; *Packman*, 267 F.3d at 638. As discussed above, Plaintiff falls far short of this showing, and thus cannot prevail under these theories.

Next, to the extent Plaintiff attempts to proceed under a "false advertising" theory, such attempt fares no better. A false advertising claim requires proof of five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819 (7th Cir. 1999).

Plaintiff contends that Defendant's use of the Apple Haus Mark is "either false or misleading because that [mark] refers to a geographic place, the Building, and [Defendant]'s good[s] do not originate from the Building." [36] at 15. But the Apple Haus Mark does not refer to, or otherwise identify the Building, nor does Plaintiff offer any evidence that Defendant's labeling suggests that Defendant's products originate from the Building. Thus, Plaintiff fails to offer evidence that Defendant has engaged in any false statements.[1]

---

[1] Likewise, Plaintiff's purported evidence of damages remains speculative. Plaintiff argues that Defendant "has inhibited [its] ability to lease the Building," [36] at 16, but the record shows that Plaintiff actually executed a current lessee, *see* [37] ¶ 35, and Plaintiff does not present any evidence

For these reasons, this Court grants summary judgment to Defendant on Count II.

### C. Count IV: Illinois Act Claim

Finally, Count IV seeks to hold Defendant liable under the Illinois Uniform Deceptive Trade Practices Act. [1] ¶¶ 56–62. In Illinois, courts resolve deceptive practices claims according to the principles set forth in the Lanham Act. *Manley v. Boat/U.S., Inc.*, 75 F. Supp. 3d 848, 853 (N.D. Ill. 2014); *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001); *Tony Jones Apparel, Inc. v. Indigo USA LLC*, No. 03 C 0280, 2003 WL 22220193, at *5 (N.D. Ill. Sept. 24, 2003); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994).

As discussed above, Plaintiff's Lanham Act claims fail as a matter of law. This Court thus also grants summary judgment to Defendant on Count IV.

## IV. Conclusion

For the reasons explained above, Defendant's motion for summary judgment [31] is granted. The Clerk is directed to enter judgment for Defendant and against Plaintiff. All dates and deadlines, including the 10/7/2019 trial date, are stricken. Civil case terminated.

Dated: August 7, 2019

Entered:

_____
John Robert Blakey
United States District Judge

---

that it stands to lose that lessee. In short, the record remains devoid of any evidence regarding actual damages relating to Defendant's purported false advertising.